IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>*Plaintiff*<br><br>v.<br><br>**JOSE RODOLFO LOPEZ-AMPARO,**<br>*Defendant* | **Criminal No. 17-644 (PG)** |

**MOTION FOR RECONSIDERATION OF STAY OR, IN THE ALTERNATIVE, AN ORDER DIRECTED TO THE USPO AND RESPONSE TO THE GOVERNMENT'S MOTION FOR REVOCATION FOR ORDER OF RELEASE**

TO THE HONORABLE JUAN PEREZ-GIMENEZ
UNITED STATES DISTRICT JUDGE
FOR THE DISTRICT OF PUERTO RICO

The Defendant, Jose Rodolfo Lopez-Amparo ("Mr. Lopez"), represented by the Federal Public Defender for the District of Puerto Rico, through the undersigned counsel, respectfully submits the following memorandum in support of his motion for reconsideration of this Court's decision granting a stay of the December 22, 2017 order of release (the "Order"). Mr. Lopez also opposes the government's memorandum of law in support of revocation of the Order and request for *de novo* bail hearing and requests that, should it not lift the stay, this Court in the alternative direct the United States Probation Office ("USPO") to continue with its third-party custodian evaluation as was ordered on December 22, 2017.

# I. Introduction

On December 21, 2017, Mr. Lopez was indicted for one count of illegal reentry in violation of 8 U.S.C. § 1326(a). (ECF No. 9.) On December 22, 2017, Magistrate Judge Marcos E. Lopez held an arraignment and bail hearing. (ECF No. 15.) At the hearing, undersigned counsel argued that Mr. Lopez was not a flight risk in light of, *inter alia*, his lack of criminal history and his strong family and community ties in Puerto Rico. The defense proffered in particular that Jorge Luis Osorio-Taveras, a close cousin of Mr. Lopez who had not yet been evaluated by the USPO, was prepared to serve as a third-party custodian. (ECF No. 15.) The Magistrate Judge, after carefully considering the factors delineated under the Bail Reform Act (the "BRA"), granted Mr. Lopez conditions of pretrial release which included release to a third-party custodian approved by the USPO and $5,000 in cash or secured bond. (ECF No. 15). The government moved for a stay of the decision before Magistrate Judge Marcos E. Lopez, which was denied. (ECF No. 15.)

Later that day, the government moved for an "emergency" stay of the Order pending a *de novo* hearing before Your Honor and for revocation of the Order. (ECF Nos. 11, 12.)[1] The motion for a stay was granted on December 26, 2017. (ECF No. 13.) The government's papers submitted in support of the motions omit crucial facts proffered by the undersigned at the hearing. The government also relies principally on two-decade-old *dicta* from *United States v. Melendez*, 55 F. Supp. 2d 104 (D.P.R. 1999), a case which *did not even involve the issue of bail* in effort to circumvent the plain language and structure of the BRA and controlling First Circuit precedent, which require district courts to make individualized pretrial release determinations.

---

[1] It is not clear what "emergency" prompted the government's motion, as orders granting pretrial release in illegal reentry cases are not always stayed pending review by the district court. *See, e.g.*, *United States v. Ventura*, 17-644 (E.D.N.Y. filed Apr. 7, 2017) (ECF Nos. 14, 20).

## II. Argument

A. Standard of Review

While this Court undertakes an independent review of the Magistrate Judge's decision, it must give the decision "such deference as the care and consideration manifested by the magistrate judge warrant." *See United States v. Simone*, 317 F. Supp. 2d 38, 42 (D. Mass. 2004). "In determining whether suitable conditions exist[ ], a judicial officer [is] required to take into account the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence as to guilt or innocence; (3) the history and characteristics of the accused, including past conduct; and (4) the nature and gravity of the danger posed by the person's release." 18 U.S.C. § 3142(g); *United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990).

In this case, the government has conceded that Mr. Lopez is not a danger to the community. Rather, it argues that Mr. Lopez is a flight risk based on the other three factors to be considered. As illustrated below, the Magistrate Judge's decision that conditions of release were warranted is amply supported by the record and the *relevant* case law, and should be affirmed.

B. Nature and Circumstances of the Offense Charged

The government argues in its motion, as it did before the Magistrate Judge, that an alien charged with illegal entry is an "inherent" or "enormous" flight risk. (*See* Mot. for De Novo Hearing, at 2 (ECF No. 11)). For this extraordinary proposition, it cites only *United States v. Melendez*, 55 F. Supp. 2d 104 (D.P.R. 1999), a case which did not involve the issue of bail or the BRA. The issue before the court in *Melendez* was whether dismissal of the indictment was the appropriate remedy for a failure by the government failure to

bring the defendant before a magistrate without unnecessary delay as required by the Federal Rules of Criminal Procedure. *Id.* at 109. The court declined to dismiss the indictment and remarked that it was unwarranted because the defendant, who was an illegal alien, suffered little prejudice because he likely would not have obtained bail since "an illegal alien, particularly one charged with reentry to be an inherent flight risk," and that "risk of flight for an illegal alien charged with reentry is enormous." *Id.* at 109, 110 n.6. The issue of bail, however, was not before this Court in *Melendez*, so these statements are clearly dicta, and the government's attempt to extrapolate that language to erect a *per se* rule in this District that all aliens charged with illegal entry are flight risks should be rejected.

Furthermore, such a rule should be rejected because it would directly contravene the plain language and structure of the BRA and governing precedent. For example, as the Tenth Circuit has recently held on this subject: "although Congress established a rebuttable presumption that certain defendants should be detained, *it did not include removable aliens on that list.* The [BRA] directs courts to consider a number of factors and make pre-trial detention decisions as to removable aliens 'on a case-by-case basis.'" *See United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017) (reversing district court order of detention based on risk of flight related to immigration status) (emphasis added) (citations omitted); *see also Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 791 (9th Cir. 2014) (striking down as unconstitutional a law which "require[d] pretrial detention [of] every undocumented immigrant" because "there is no evidence that undocumented status correlates with unmanageable flight risk"). The First Circuit, moreover, has held that "[d]etention determinations *must be made individually* and, in the final analysis, must be *based on the evidence which is before the court regarding the particular defendant.* The

4

inquiry is factbound. *No two defendants are likely to have the same pedigree or to occupy the same position.*" *See Tortora*, 922 F.2d at 888 (emphasis added).²

In this case, while Mr. Lopez might be an alien charged with illegal reentry, he is simply not a risk of flight. He lived in Puerto Rico between 2008 and 2010 and maintained a close relationship with his family members here during that period. He has never even held a passport or driver's license and does not have a record for failing to appear. Moreover, the nature of the offense charged itself reflects that Mr. Lopez wants to be in Puerto Rico. In short, while his immigration status *may* be a factor that *can* be considered, *United States v. Neves*, 11 F. App'x 6, 8 (1st Cir. 2001), the Magistrate Judge properly found that the evidence in the record shows that its conditions of release would allay any risk of flight.

C. <u>History and Characteristics of Mr. Lopez</u>

Mr. Lopez, at 34 years of age, has been an abiding productive and peaceful member of every community in which he has lived. Mr. Lopez has had no prior arrests or convictions. He has never used drugs and in fact the USPO's urine analysis came back negative. He also lived in Puerto Rico from 2008 to 2010 without incident, only departing from the island in June 2010 after learning that his mother had passed away in the Dominican Republic.

Jorge Luis Osorio Taveras ("Mr. Osorio") is Mr. Lopez's cousin. He and Mr. Lopez were both born and raised in San Francisco de Macorís in the Dominican Republic, with Mr. Osorio, 36, being less than two years Mr. Lopez's senior. Mr. Osorio is an American

---

² District courts around the country have granted conditions of release to defendants charged with illegal reentry in accord with this construction of the BRA. *See, e.g.*, *United States v. Lizardi-Maldonado*, No. 1:17-CR-35-RJS, 2017 WL 4877433, at *4 (D. Utah. Jun. 28, 2017) (collecting cases on point and granting conditions of release to defendant charged with illegal reentry who had four prior illegal reentries and a drunk driving conviction).

5

citizen who has lived in this country for 20 years, is gainfully employed, has no criminal record and lives with his family in Puerto Nuevo. He is both cognizant of and willing to take on the responsibilities of a third-party custodian of his cousin, and willing to put up $5,000 cash for Mr. Lopez's bail. The defense proffered this information to the Magistrate Judge during the bail hearing and noted that the USPO had yet to consider Mr. Osorio as a third-party custodian. The Magistrate Judge therefore ordered the USPO to investigate whether Mr. Osorio would qualify as a third-party custodian and report back to the court if not. (ECF No. 15.)

This information is unfortunately omitted from the government's motions. Instead, the government regurgitates much of what is mentioned in the USPO's pre-trial services report and insists that Mr. Lopez's only family contact in Puerto Rico is another cousin Juan Lopez. But this is simply not true. Mr. Lopez has a relatively strong family support system in San Juan which includes two cousins and their respective families, who showed up to support him on short notice at the bail hearing before the Magistrate Judge. This militates in favor of his pretrial release.

D. <u>Weight of the Evidence</u>

The precarious weight of the evidence in this case also supports the pretrial release of Mr. Lopez. It has been previously held that, where forthcoming defense motions raise the prospect that the government will not be able to prove the charges against the defendant, the weight of the evidence factor supports pretrial release. *See, e.g.*, *United States v. Simone*, 317 F. Supp.2d 38, 46-47, 48 (D. Mass. 2004); *see also United States v. Shareef*, 907 F. Supp. 1481, 1485 (D. Kan. 1995) ("the court must seek to avoid the likelihood that a defendant would be required to serve nearly as long as a period of imprisonment through pretrial detention as he would if found guilty of the offense, when it appears to the court

that the quantity and/or quality of the evidence is problematic"). In this case, as proffered by the undersigned at the bail hearing, the defense anticipates that it will bring a motion to dismiss the indictment under 8 U.S.C. § 1326(d), collaterally attacking the use of alleged expedited removal in June 2010 on the grounds that it cannot, consistent with due process, serve as the predicate for the illegal reentry charge here.

Specifically, in *United States v. Raya-Vaca*, 771 F.3d 1195 (9th Cir. 2014), the Ninth Circuit reversed an illegal reentry conviction predicated on an expedited removal on the grounds that the removal in that case violated the defendant's due process rights to notice and an opportunity to respond. In *Raya-Vaca*, the defendant was not permitted to read or review information in a sworn statement executed in a connection with a removal. *Id.* at 1205.

In this case, the defense anticipates filing a motion to collaterally attack the removal order and dismiss the indictment on similar grounds. Mr. Lopez, who is illiterate, went to Luis Muñoz Marín Airport on June 1, 2010, intending to take a flight to the Dominican Republic after his mother passed away the night before. He was detained by ICE officials, given documents to sign, and subjected to a "removal" within a few short hours after arriving at the airport. These facts support a due process violation similar to that in *Raya-Vaca*, and militate in favor of Mr. Lopez's pretrial release.

E. <u>USPO Third-Party Custodian Investigation</u>

The USPO office has informed the undersigned that it interprets this Court's stay of the Order to preclude it from continuing the investigation and clearance of Mr. Osorio as a third-party custodian. However, the USPO's investigation and potential clearance of Mr. Osorio in advance of this Court's *de novo* hearing would greatly serve the interests of judicial economy. It would expedite Mr. Osorio's release should this court deny the government's

motion to revoke the Order and, more importantly, could implicate or eliminate the necessity and scope of this Court's review of the order should Mr. Osorio not be cleared. Accordingly, if this Court does not lift the stay, the defense moves in the alternative that the USPO be directed to complete its investigation of Mr. Osorio as a third-party custodian.

### III. Conclusion

For this reasons indicated above, Mr. Lopez request that this Court reconsider and lift the stay of the Order (ECF No. 13), or in the alternative, direct the USPO to complete its investigation and clearance of Mr. Osorio in advance of the *de novo* hearing, and deny the government's motion to revoke the Order

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on this 28th day of December, 2017.

**Eric A. Vos**
Chief Defender
District of Puerto Rico


*S/ Lance O. Aduba*
Lance O. Aduba
Research & Writing Specialist
Government No. G02714
241 F.D. Roosevelt Ave.
San Juan, Puerto Rico 00918
(787) 281-4922
(787) 281-4899 Fax
Lance_Aduba@fd.org