# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**
    Plaintiff,

v.

**JOSE RODOLFO LOPEZ-AMPARO,**
    Defendant.

CRIMINAL NO. 17-644 (PG)

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION AND IN FURTHER SUPPORT OF ITS EMERGENCY MOTION FOR STAY OF BAIL ORDER PENDING ITS MOTION FOR A *DE NOVO* HEARING

**TO THE HONORABLE COURT:**

COMES NOW, the United States, by and through the undersigned attorney, and very respectfully submits the following in opposition to defendant Jose Rodolfo Lopez-Amparo's motion for reconsideration of this Honorable Court's order granting United States' emergency motion for stay of the bail order pending its motion for a *de novo* hearing:

1. On December 21, 2017, defendant was indicted for one count of illegal reentry in violation of 8 U.S.C. § 1326(a). (ECF No. 9).

2. A bail and arraignment hearing was held on December 22, 2017 whereby Magistrate Judge Marcos E. Lopez granted defendant conditions of pretrial release, which included release to a third-party custodian approved by the USPO and $5,000 in cash or secured bond. (ECF No. 15). The United States moved for a stay of that decision, but its motion was denied. *Id*.

3. On the same day, United States filed two motions: (1) a motion for *de novo* hearing and appeal of Magistrate Judge Lopez's order releasing defendant, (ECF No. 11), and (2) an emergency motion to stay the bail order pending its motion for a *de novo* hearing. (ECF No. 12).

4. On December 26, 2017, Judge Daniel R. Dominguez issued an order granting United States' emergency motion for stay of the bail order pending its motion for a *de novo* hearing. (ECF No. 13).

5. On December 27, 2017, Judge Juan M. Perez-Gimenez issued an order scheduling a status conference for January 8, 2017. (ECF No. 14).[1]

6. On December 29, 2017, defendant filed a motion requesting that this Honorable Court "reconsider" its order granting the United States' motion for a stay of the bail order, or in the alternative, to direct the United States Probation Office ("USPO") to continue with its third-party custodian evaluation (hereinafter the "Motion for Reconsideration").[2] (ECF No. 18).

**ARGUMENT**

1. **No Grounds for a Motion for Reconsideration**

Defendant's Motion for Reconsideration fails to meet the standard for this Honorable Court to "reconsider" its order staying Magistrate Judge Lopez's bail determination. Unlike the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure do not explicitly provide for motions for reconsideration. *See United States v. Camacho-Santiago*, 52 F. Supp. 3d 442 (D.P.R. 2014); *but see U.S. v. Silva-Rentas*, No. CR 14-387 (PAD), 2015 WL 5084629, at *1 (D.P.R. Aug. 27, 2015) ("district courts generally have inherent authority to decide motions for

---

[1] Defendant thereafter, on December 29, 2017, moved this Honorable Court to set the *de novo* hearing for the same day. United States does not oppose defendant's request if its motion, (ECF No. 11), is granted.
[2] Defendant filed the instant motion twice; the first time in error, ECF No. 16, as noticed by this Honorable Court on December 28, 2017. This opposition is filed in response to the latter motion, ECF No. 18, which was filed on December 29, 2017.

reconsideration and rehearing of orders in criminal proceedings.") (*citing U.S. v. Bravo–Fernández*, 790 F.3d 41, 61 n.14 (1st Cir. 2015)).

Motions for reconsideration in criminal cases are only appropriate in a limited number of circumstances: "(1) where the movant presents newly discovered evidence; (2) where there has been an intervening change in the law; or (3) where the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Torres-Moreno*, 28 F. Supp. 3d 136, 137 (D.P.R. 2014) (*citing United States v. Allen*, 573 F.3d 42, 53 (1st Cir.2009) and *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n. 2 (1st Cir.2005)).

Defendant's Motion for Reconsideration does not point to any newly discovered evidence or an intervening change in the law. Nor does the motion demonstrate that the Court's order staying bail pending the United States' motion for a *de novo* hearing was clearly unjust or based on a manifest error of law. Rather, in support of reconsidering its decision to stay the bail determination defendant merely points to a single relative who was not included in the Pre-Trial Services Report ("PSR") and whose immigration status remains unknown[3] to insinuate that defendant has a "relatively strong family support system in San Juan." (ECF No. 18 at p. 6). Simply said and as stated in its original moving papers, defendant's ties to Dominican Republic far outweigh any ties that he has in the United States. *See* ECF No. 11 at pp. 6-7 (his employment and immediate family, including his child, are all in Dominican Republic). Moreover, any argument concerning defendant's alleged strong family ties can be made at the *de novo* hearing if the United States' motion requesting that hearing is granted. Asking this Honorable Court to reconsider its decision to stay the bail order while the United States' motion for a *de novo* hearing

---

3  As a condition to bail, Magistrate Judge Lopez stated that there could not be any illegal migrants at the house where defendant would be staying if bail was granted, which helped sparked the requirement that USPO perform a third-party custodian evaluation.

is still pending—and has not been granted—simply because he does not agree with the Court's decision to stay the bail determination is premature and improper. *Ayala v. United States*, No. CIV. 05-1291(DRD), 2009 WL 4727747, at *1 (D.P.R. Dec. 2, 2009) ("motion for reconsideration is unavailable if said request simply brings a point of disagreement between the court and the litigant, or reargues matters already properly disposed of by the Court.").

## 2. Nature and Circumstances of the Offense Charged

Defendant asserts that the United States "relies principally on two-decade-old dicta from *United States v. Melendez*, 55 F. Supp. 2d 104 (D.P.R. 1999)" for the proposition that "*all aliens charged with illegal entry are flight risks[.]*" (ECF No. 18 at p. 4) (emphasis added). Put simply, the United States did not request that this Court create a *per se* rule providing that all illegal migrants are flight risks. *See* ECF No. 11 at p. 4 ("…this Court should also consider Defendant's immigration status along with all other available information *in applying the 18 U.S.C. § 3142 factors*."). Rather, in contrast to defendant's attempt to inaccurately simplify the United States' argument, the United States clearly requested that this Honorable Court look at the factors set forth in 18 U.S.C. § 3142(g) and evaluate this defendant's flight risk on a "case-by-case" basis.[4] *Id*. at pp. 3-8 (summarizing the factors set forth in 18 U.S.C. § 3142(g) and applying the evidence from the PSR specifically to this defendant); *see also United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990).

The nature of the offense is *one* factor of Title 18, *United States Code*, Section 3142(g) that is to be considered by the Court when determining if bail should be granted. The United States' reliance on *Melendez*—and it appears this Court's analysis in that case—demonstrates that the

---

4 The United States does not—and did not in its moving papers—dispute defendant's assertion that each bail determination must be evaluated on a case-by-case basis.

*nature* of being charged with illegal reentry should weigh heavily in the Court's risk of flight analysis. More specifically, in *Melendez*, the defendant was charged with 8 U.S.C. § 1326(a)(2)(A), (b)(2).[5] There, as noted by the defendant in his Motion for Reconsideration, the Court did not have to address the issue of bail when determining whether the defendant was prejudiced by the fact that he was going to remain incarcerated whether or not he had a speedy arraignment. Nevertheless, the Court provided the following analysis when assessing whether the defendant likely would have been granted bail in light of the offense charged against him:

> … Defendant here suffered little prejudice because of the very slim odds that he would have been released on bail had he properly been arraigned after his arrest. It strains credulity to surmise that a judge or magistrate would have granted Defendant, an illegal alien arrested for the crime of reentry, bail. *The risk of flight for an illegal alien charged with reentry is enormous.* No reasonable court would release this Defendant on bail. *See, e.g.*, *United States v. Warwar*, 57 F.R.D. 645, 648 (D.P.R.1972) (denying bail pending appeal because, inter alia, possibility of flight was real and apparent since defendant was an alien without any ties to the community), *aff'd*, 478 F.2d 1183 (1st Cir.1973). In other words, it is outlandish to assert that Defendant would have been released on bail and not have remained incarcerated for sixteen days but for the Rule 5(a) violation.

*United States v. Melendez*, 55 F. Supp. 2d 104, 109 (D.P.R. 1999) (emphasis added). In other words, the Court specifically addressed the fact that the defendant's illegal reentry charge was a factor that it would have considered in making a bail determination.[6] In contrast to defendant's assertion that the United States was using prose from this decision to create a bright-line rule, the United States merely agrees with this Court's sound reasoning that there is a significant risk of flight for illegal aliens charged with reentry based on the nature of the offense charged. *Id* at 109;

---

5 The indictment included an enhancement to (b)(2) as a result of the defendant's prior criminal history.
6 It should be noted that the Court had the opportunity to discuss Melendez's criminal history in assessing the prejudice of remaining in jail pending his trial, but instead focused solely on defendant's charge of illegal reentry.

*see also Demore v. Kim*, 538 U.S. 510, 518-20 (2003) (U.S. Supreme Court noting that the probability that a deportable criminal alien will abscond if released on bail is unacceptably high); *U.S. v. Oscar Garcia-Chagala*, No. 2:17-cr-133-FtM-38MRM, 2017 WL 6535198, at *3 (M.D. Fla. Dec. 21, 2017) ("…there is ample support for the consideration of the nature of an illegal-re-entry offense, including a defendant's immigration status and surrounding circumstances, as a factor in a detention analysis."). As properly analyzed in the United States' moving papers, however, the fact that defendant is charged with illegal reentry is not *determinative* of whether bail should be granted; there are still other factors that must also be considered by the Court. *See* 18 U.S.C. § 3142.

In his Motion for Reconsideration, defendant asserts that he "lived in Puerto Rico between 2008 and 2010" and "wants to be in Puerto Rico" now. (ECF No. at p. 5). Frankly, defendant's subjective *wants* do not alleviate the need to follow the United States' immigration laws and regulations, which he failed to do in 2010 and during his most recent attempt to enter the United States. At this time, defendant's prior immigration record makes him inadmissible to legally stay in the United States; thus, the only manner in which defendant can stay here is by avoiding prosecution. Since defendant allegedly has a strong desire not to be deported, which is the only conclusion at the termination of these proceedings in light of his immigration status, then he has a strong incentive not to participate in these proceedings, and thus flee. Additionally, as mentioned in the United States' moving papers, based on his unlawful presence, defendant is not lawfully employment here in the United States, but rather, works for his family-owned business in Dominican Republic. (ECF No. 11 at p. 7). Therefore, defendant's only chance to stay in Puerto Rico is to avoid this prosecution.

### 3. History and Characteristics of Defendant

Defendant next contends that he has an additional tie to Puerto Rico, besides his cousin Juan Lopez, who is willing to take on responsibilities of a third-party custodian and willing to put up $5,000 cash for defendant's bail. (ECF No. 18 at p. 6). As stated in the United States' moving papers, the defendant was previously deported from the United States in June 2010. Since then, he has entered into a six-year consensual relationship with Ms. De La Cruz-Diaz, and they have procreated one young child together. Both Ms. De la Cruz-Diaz and defendant's child live in the Dominican Republic along with his two sisters. Defendant and his family were born and raised in Dominican Republic. Conversely, defendant allegedly has two cousins currently living Puerto Rico. Put simply, defendant's ties to his native country, Dominican Republic, far outweigh his ties to the jurisdiction where he is being prosecuted, Puerto Rico.

### 4. Weight of the Evidence

In support of his argument that the weight of the evidence supports release, defendant contends that at some future time he will be filing a motion to dismiss the indictment under 8 U.S.C. § 1326(d), collaterally attacking defendant's expedited removal in June 2010. "The burden of proof in a collateral attack on a deportation order is on a defendant based on the presumption of regularity that attaches to a final deportation order." *United States v. Lopez-Rodriguez*, No. CR 17-0022 (DRD), 2017 WL 4081898, at *3 (D.P.R. Sept. 13, 2017) (quoting *United States v. Arevalo–Tavares*, 210 F.3d 1198, 1200 (10th Cir. 2000)). Notably, and similar to the defendant's 2010 removal procedure, non-immigration judge proceedings under 8 U.S.C. § 1225(b) have been held not to violate due process. *See e.g.*, *United States v. Lopez-Vasquez*, 227 F.3d 476, 485 (5th Cir. 2000).

As the defendant has yet to make that motion, the burden remains on him to demonstrate that his removal was not valid by satisfying all three elements under 8 U.S.C. § 1326(d). In particular, "defendant must prove that there was a fundamental procedural error, and that such error caused him prejudice." *Lopez-Rodriguez,* 2017 WL 4081898, at *6; *United States v. Luna*, 436 F.3d 312, 319 (1st Cir. 2006). Since there is no motion to dismiss currently pending before this Honorable Court and a Grand Jury found probable cause that defendant attempted to re-enter the United States after previously being removed, the weight of the evidence remains in favor of the United States' position that defendant should not be released on bail.

**WHEREFORE**, the United States of America respectfully submits this memorandum in opposition to defendant's Motion for Reconsideration and further support of its emergency motion for stay of the bail order pending its motion for a *de novo* hearing.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 3rd day of January 2018.

**ROSA EMILIA RODRÍGUEZ-VÉLEZ**
United States Attorney

s/ *Sean R. Gajewski*
Special Assistant United States Attorney
USDC No. G02713
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel: (787) 282-1932

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of January 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties in this case.

                                        s/ *Sean R. Gajewski*
                                        Sean R. Gajewski
                                        Special Assistant United States Attorney